IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROSE URE MEZU | * | |
| | * | |
| v. | * | CIVIL NO. JFM-02-3713 |
| | * | |
| MORGAN STATE UNIVERSITY, et al. | * | |

*****

MEMORANDUM

Rose Ure Mezu has brought suit alleging that she suffered harassment by her supervisor and was denied the salary increase associated with promotion to the rank of full Professor at Morgan State University ("MSU") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Now pending before me is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants MSU and Dr. Dolan Hubbard. For the reasons stated below, I will grant the motion.

I.

Mezu was hired by MSU on January 18, 1993 to teach as a lecturer. In November 1993, Mezu was appointed Assistant Professor of English. Mezu was promoted to the rank of Associate Professor in 1998, but she claims she "was placed on a salary not commensurate with the salary of native-born American Associate professors of the same rank and relative experience." (Compl. at 3.)[1] On June 5, 2000, Mezu was denied promotion to the rank of full Professor by Dr. Clara Adams, the

---

[1] Mezu's complaint was filed *pro se*. Mezu is now represented by counsel and her counsel filed the opposition to the motion to dismiss on Mezu's behalf.

-1-

Vice President for Academic Affairs at MSU.  This denial was based on the recommendations of Dr. Hubbard and the Dean of the College of Liberal Arts and Sciences.

According to the allegations in the complaint, throughout her employment Mezu has suffered constant harassment by Dr. Hubbard, including being subjected to insults and having aspersions cast on her integrity for taking occasional family-related or sick leave.  (*Id.* at 7.)  Meza also avers that since Dr. Hubbard became department chair in September 1998, she has suffered the loss of merit salary increases and received a lower salary than deserved because of Hubbard's gender bias and discrimination on the basis of her national origin – Nigerian.

On August 18, 2001 Mezu filed a charge with the Equal Employment Opportunity Commission ("EEOC").  In her charge, Mezu alleged discrimination on the basis of national origin only.  Specifically, Mezu alleged that she was "subjected to different terms and conditions of employment, such as leave and merit increases." (Def.'s Ex. 1, EEOC Charge.)  She also alleged that she had been disciplined while similarly situated American co-workers had not been disciplined.  (*Id.*)

II.

A.

Defendants first seek to dismiss Mezu's Title VII failure to promote claim.  In Maryland, a deferral state, a Title VII charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5(e)(1); *see also Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 748 (D. Md. 2002).  If a charging party fails to comply with this filing requirement, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit.  *Van Slyke v. Northrup Grumman Corp.*, 115

F. Supp. 2d 587, 592 (D. Md. 2000), *aff'd*, 2001 WL 967503 (4th Cir. 2001) (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 620-21 (4th Cir. 1997)).

According to the parties, Mezu filed her EEOC charge on August 18, 2001.[2] Therefore, in order for the charge to be timely, any act complained of would have had to have been committed in or later than mid-October 2000. Thus, the June 5, 2000 failure to promote occurred outside the statutory time period. With respect to discrete acts, such as the alleged failure to promote, "only incidents that took place within the timely filing period are actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2073 (2002).

Mezu argues that the doctrine of equitable tolling should be applied to her failure to promote claim. "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *C.M. English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). "To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead [her] and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.*

Mezu argues that MSU misled her by sending her the June 5, 2000 letter denying her promotion over the summer vacation. Mezu asserts that MSU knew she would not get the letter because she generally traveled during the summer vacation. Mezu, however, acknowledges that she received the June 5, 2000 letter when she returned for the fall semester in late August 2000. (Mezu Aff. ¶ 5.) Even assuming Mezu's allegations are true, her failure to promote claim therefore is still time-

---

[2]I will assume that this filing date is correct although the EEOC charge itself appears to reflect that it was filed on October 9, 2001.

barred. Accordingly, the claim will be dismissed.

B.

Defendants next seek to dismiss Mezu's Title VII hostile work environment claim. As an initial matter, I will explain why I am converting the motion to dismiss into a motion for summary judgment with regard to this claim. When "matters outside the pleading are presented to and not excluded by the court, the [Rule 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). However, before a court converts a Rule 12(b)(6) motion into a motion for summary judgment, it must determine whether the plaintiff had adequate notice of conversion. *See Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

In this instance, Mezu herself invited conversion. She filed her own affidavit and several exhibits with her opposition to defendants' motion to dismiss. Thus, Mezu was clearly on notice of the possibility that I would consider such affidavit and exhibits and convert the motion into one for summary judgment. *See, e.g.*, *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 5 n.5 (1st Cir. 1998) (stating that the plaintiffs invited the conversion where the plaintiffs attached a plaintiff's sworn statement with their oppositions to motions to dismiss); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment.").

To establish a hostile work environment claim, Mezu must show that: "(1) the harassment was unwelcome; (2) the harassment was based on her national origin or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere;

and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Mezu has not alleged and cannot demonstrate the third element.

"To determine whether alleged harassment constitutes a hostile work environment, the court looks to all the surrounding circumstances including '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance.'" *Talley v. Farrell*, 156 F. Supp. 2d 534, 541 (D. Md. 2001) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).

Mezu generally alleges that Dr. Hubbard harassed her, treated her unfairly, and filed baseless negative reports regarding her performance. (Mezu Aff. ¶ 7; *see also* Pl.'s Ex. 2 at 11.) Mezu, however, does not point to a single instance of severe harassment. In fact, the only specific references to Dr. Hubbard involve instances where he questioned her about the details or finances of a conference or forum she was planning, questioned her about her absence from class, banned her from making photocopies for a conference from the English department office, or removed her from teaching an experimental course without his permission. (*See generally* Pl.'s Ex. 2 at 11-29.)[3] Even assuming, as I must, that each of these allegations is true, the incidents of harassment are not sufficiently "severe or

---

[3]Significantly, not one of these alleged instances of harassment occurred during the 300 day period prior to August 18, 2001. To state a valid hostile work environment claim, an act contributing to the claim must occur during the filing period. *Beall*, 130 F.3d at 620-21. On this basis alone, Mezu's hostile work environment claim should be dismissed. However, because Mezu alleges in her complaint that she has suffered incessant and unrelenting harassment from Dr. Hubbard since he was appointed, (Compl. at 7), I will assume that at least one instance of harassment occurred during the relevant period.

pervasive" to constitute a hostile work environment. *See, e.g.*, *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994) ("The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial.") (citation omitted); *Talley*, 156 F. Supp. 2d at 541.[4]  Accordingly, summary judgment will be granted in favor of the defendants for Mezu's hostile work environment claim.

III.

Defendants next seek to dismiss Mezu's claim under the EPA. The EPA provides a remedy for gender-based discrimination only. 29 U.S.C. § 206(d)(1). Mezu, however, asserts in her complaint that "[o]n my promotion to the rank of Associate Professor with tenure in 1998[,] I was placed on a salary not commensurate with the salary of native born American Associate professors of the same rank and relative experience." (Compl. at 3.) Therefore, she fails to state a claim upon which relief can be granted.[5]

Moreover, even if Mezu had properly alleged an EPA claim, summary judgment would be granted in favor of the defendants on that claim. To establish a prima facie case under the EPA, Mezu must prove: "(1) that her employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598,

---

[4]Moreover, there is no evidence to suggest that any of these instances were based on Mezu's national origin or gender.

[5]Mezu's only opposition on this point is that she "filed an EPA claim before the EEOC based on her sex and not only National Origin. This claim is not barred for this reason." (Pl.'s Opp. at 4.) This argument fails for two reasons. First, Mezu's complaint, rather than her EEOC charge, is the basis of her EPA allegations. Second, Mezu's EEOC charge does not allege discrimination or unequal pay on the basis of sex. Mezu only checked the box marked "National Origin" and her narrative does not allege or refer to gender discrimination. (Def.'s Ex. 1.)

613 (4th Cir. 1999). Mezu has presented no evidence demonstrating that MSU paid different wages to male and female employees. Defendants, on the other hand, have presented evidence (that Mezu has not contradicted), that Mezu "has been consistently recommended and received merit increases from September 1998 to 2001 while other similarly situated associate professors not of her national origin have either received lower merit increases or no increases at all." (Def.'s Ex. 2 at 5.) Accordingly, Mezu's EPA claim fails.

IV.

Mezu's final claim is asserted under the FMLA.[6] Under Fourth Circuit law, Mezu's claim for damages against MSU, a state agency, is barred by the Eleventh Amendment. *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001), *cert. denied*, 122 S.Ct. 812 (2002) ("The FMLA does not validly abrogate a state's Eleventh Amendment immunity from suit.").[7] Mezu's claim for damages against Hubbard is also barred because "the state is the real party in interest when an official is sued for damages for official acts under the FMLA." *Montgomery v. Maryland*, 266 F.3d 334, 340 (4th Cir. 2001), *vacated on other grounds*, 122 S.Ct 1958 (2002) (citing *Lizzi*, 255 F.3d at 136-38). Likewise, while the Eleventh Amendment does not bar suits seeking to enjoin state officials from committing continuing violations of federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *Booth v.*

---

[6]It is unclear whether Mezu is actually asserting a claim pursuant to the FMLA. Mezu's *pro se* complaint does not appear to allege an FMLA claim. However, in her request for injunctive relief, Mezu does request that MSU grant her relief in accordance with the FMLA and Title VII. (Compl. at 27.) This is the only reference to the FMLA in Mezu's entire complaint. Still, because the defendants have briefed the issue and in order to err on the side of completeness, I will briefly address the FMLA issues.

[7]This exact issue is currently before the Supreme Court in the case of *Nevada Dep't of Human Resources v. Hibbs*, 122 S.Ct. 2618 (2002). Oral argument occurred on January 15, 2003.

*State of Maryland*, 112 F.3d 139, 142 (4th Cir. 1997), Mezu has not alleged any continuing violation of the FMLA. In fact, the last alleged violation of the FMLA occurred in March 2001. (Compl. at 8-9). Accordingly, Mezu's FMLA claim will be dismissed.

    A separate order is being entered herewith.

Date:  March 31, 2003                       /s/_____
                                               J. Frederick Motz
                                               United States District Judge